BRETT A. SHUMATE
Assistant Attorney General
Civil Division
KIRSTEN L. WILKERSON
Director, Torts Branch
STEPHEN R. TERRELL (CA Bar No. 210004)
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW TAIBBI, | HON. EVELYN PADIN |
| Plaintiff, | Civil Action No. |
| v. | 25-2275 (EP) (LDW) |
| SYDNEY KAMLAGER-DOVE, | **UNITED STATES' OPPOSITION TO MOTION TO STRIKE CERTIFICATION OR, IN THE ALTERNATIVE, FOR LIMITED DISCOVERY** |
| Defendant. | |

**TABLE OF CONTENTS**

I.    INTRODUCTION...............................................................................................1

II.   RELEVANT ALLEGATIONS.........................................................................2

III.  ARGUMENT.....................................................................................................4

   A.  Plaintiff's Exclusive Remedy is the FTCA. ...................................................4

   B.  District of Columbia, Not New Jersey, Scope of Employment Law Applies
   Here..................................................................................................................5

   C.  The Statements at Issue Were Clearly Made Within the Course and Scope of
   Representative Kamlager-Dove's Office or Employment. ...................................7

   D.  There is No Basis for Discovery....................................................................13

IV.   CONCLUSION................................................................................................14

# TABLE OF AUTHORITITES

## Cases

*Bailey v. J&B Trucking Servs., Inc.*, 590 F. Supp. 2d 4 (D.D.C. 2008) ....................6

*Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789 (N.D. Tex. 2010)...........................................................................................................14

*Bobulinski v. Goldman*, No. 24-cv-974, 2025 WL 1707696 (D.D.C. June 18, 2025) .............................................................................................................................11

*Bowles v. United States*, 685 F. App'x 21 (2d Cir. 2017) ......................................14

*Brumfield v. Sanders*, 232 F.3d 376 (3d Cir. 2000)...................................................5

*Chapman v. Rahall*, 399 F. Supp. 2d 711 (W.D. Va. 2005)............................... 9, 11

*Council on Am. Islamic Relations v. Ballenger*,
    444 F.3d 659 (D.C. Cir. 2006)............................................................. 9, 10

*De Martinez v. Drug Enf't Admin.*, 111 F.3d 1148 (4th Cir. 1997) .................. 1, 14

*De Martinez v. Lamagno*, 515 U.S. 417 (1995)........................................................5

*Doe v. McMillan*, 412 U.S. 306 (1973) .....................................................................8

*Does 1–10 v. Haaland,* 973 F.3d 591 (6th Cir. 2020) ........................................ 9, 10

*Freiman v. Lazur*, 925 F. Supp. 14 (D.D.C. 1996)...................................................5

*Gravel v. United States*, 408 U.S. 606 (1972) ..........................................................8

*Harbury v. Hayden*, 522 F.3d 413 (D.C. Cir. 2008)...............................................12

*Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143 (6th Cir. 1994) ........13

*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984)...................................................12

*Hutchison v. Proxmire*, 408 U.S. 111 (1979) ...........................................................8

*Isaac v. Cable News Network, Inc.*, No. 23-cv-247, 2023 WL 6847101 (D. Del. Oct. 17, 2023) ...........................................................................................11

*Jacobs v. Vrobel*, 724 F.3d 217 (D.C. Cir. 2013) ..................................... 5, 6, 11, 12

*Johnson v. Weinberg*, 434 A.2d 404 (D.C. 1981)....................................................12

*Kelley v. FBI*, 67 F. Supp. 3d 240 (D.D.C. 2014).....................................................11

*Klayman v. Obama*, 125 F. Supp. 3d 67 (D.D.C. 2015).........................................13

*Lyon v. Carey*, 533 F.2d 649 (D.C. Cir. 1976) .......................................................12

*Musgrave v. Mace*, No. 2:25-cv-1823 (D.S.C. Aug. 20, 2025)...............................11

*Nixon v. Fitzgerald*, 457 U.S. 731 (1982)..................................................................8

*Operation Rescue Nat. v. United States*, 147 F.3d 68 (1st Cir. 1998).....................8

*Operation Rescue Nat'l v. United States*, 975 F. Supp. 92 (D. Mass. 1997) ..... 9, 10

*Osborn v. Haley,* 549 U.S. 225 (2007) ......................................................................1

*Richards v. United States*, 369 U.S. 1 (1962) .......................................................5, 6

*Schrob v. Catterson*, 967 F.2d 929 (3d Cir. 1992) ...............................................4, 5

*Smith v. Clinton*, 886 F.3d 122 (D.C. Cir. 2018) ...................................................13

*Trump v. Carroll*, 292 A.3d 220 (D.C. 2023).................................................. 11, 12

*United States v. Brewster*, 408 U.S. 501 (1972) .......................................................7

*United States v. Smith*, 499 U.S. 160 (1991) ..........................................................13

*Williams v. United States*, 350 U.S. 857 (1955) .......................................................7

*Williams v. United States*, 71 F.3d 502 (5th Cir. 1995)...........................................4, 9

*Wuterich v. Murtha*, 562 F.3d 375 (D.C. Cir. 2009) ............................... 1, 9, 10, 14

**Statutes**

28 U.S.C. § 1346.................................................................................5, 6

28 U.S.C. § 2671....................................................................................4

28 U.S.C. § 2679.................................................................................1, 4

**Other Authorities**

Restatement (Second) of Agency § 228 ................................................11

## I.    INTRODUCTION

Pursuant to the Westfall Act, 28 U.S.C. § 2679(d)(1), the Director of the
Torts Branch certified that the Honorable Sydney Kamlager-Dove, United States
Representative for the 37th Congressional District of California, ("Representative
Kamlager-Dove") was acting within the course and scope of her employment with
the United States House of Representatives when she "talk[ed] to voters on
Twitter," Mot. 2 (ECF No. 25-1) and communicated to her constituents about a
matter of public concern through both her official social media platforms and
official website.  Certification (ECF No. 23-1).  Thus, by law, the United States is
the substituted defendant in this action and should remain the substituted defendant
unless plaintiff shows that Representative Kamlager-Dove "in fact, engaged in
conduct beyond the scope of [her] employment."  *Osborn v. Haley,* 549 U.S. 225,
230 (2007).  Plaintiff has not and cannot make that showing.  Plaintiff has failed to
meet his burden, and the Court should deny plaintiff's motion to strike.

Nor has plaintiff made a showing sufficient to "burden[ Representative
Kamlager-Dove] with discovery," *De Martinez v. Drug Enf't Admin.*, 111 F.3d
1148, 1155 (4th Cir. 1997), that would "effectively deny" her the absolute
immunity afforded under the Federal Tort Claims Act ("FTCA"), *Wuterich v.
Murtha*, 562 F.3d 375, 382 (D.C. Cir. 2009).  The Court should deny plaintiff's

alternative request for discovery.[1]

## II.    RELEVANT ALLEGATIONS

The following is a summary of the allegations advanced in plaintiff's amended complaint ("Am. Compl.," ECF No. 8) and the United States makes no assertions in this opposition as to their veracity.

On April 1, 2025, the South and Central Asia Subcommittee of the House Committee on Foreign Affairs held a hearing entitled "Censorship Industrial Complex: The Need for First Amendment Safeguards at the State Department." 171 Cong. Rec. D320 (Apr. 1, 2025); Am. Compl. ¶ 17.  Representative Kamlager-Dove was (and remains) the Subcommittee's ranking member.  Subcommittee on South and Central Asia Website <https://democrats-foreignaffairs.house.gov/south-central-asia> (last visited Aug. 25, 2025); Am. Compl. ¶ 17.  Plaintiff Matthew Taibbi, a journalist, was an invited witness before the Subcommittee.  Am. Compl. ¶ 2.

Per the amended complaint, at the beginning of the hearing, Representative Kamlager-Dove read her prepared remarks that included the following:

> Thank you, Mr. Chair, and thank you for being here for our first South and Central Asia Subcommittee hearing.  I look forward to

---

[1] Plaintiff's motion is out of order.  Although the parties submitted letters requesting a pre-motion conference (ECF Nos. 20, 21), the Court has not yet held that pre-motion conference and plaintiff's motion is premature.  Procedures Order II.E.i.

working with the Chair in a bipartisan way on the critical issues we
are charged with overseeing.

Unfortunately, we're not having a hearing about any of those.
Instead, this Subcommittee is wasting taxpayer time and resources on
the fifth such hearing Republicans have held across multiple
committees on the so-called "censorship-industrial complex."

The majority is relitigating a made-up conspiracy theory about
a part of the State Department that no longer exists to distract from the
dumpster fire foreign policy this Administration is pursuing—and
elevating a serial sexual harasser as their star witness in the process.

*Id.* ¶ 5.

Plaintiff maintains that the statement about the "serial sexual harasser" was

directed at him and is false. *Id.* ¶¶ 2, 6. Plaintiff further alleges that, later in the

day, Representative Kamlager-Dove posted a video clip of her reading her opening

statement on her official X account with the added comment, "After this,

Republicans gave Matt Taibbi time to defend himself. It's telling that he didn't."

*Id.* ¶ 3. Representative Kamlager-Dove also posted the same video clip, with the

same comment, on her official BlueSky account. *Id.* ¶ 4. Finally, Representative

Kamlager-Dove posted a transcript, with a link to the video, of her opening

remarks on her official website. *Id.* ¶ 5. Plaintiff contends that these three

"republications" were defamatory under New Jersey law. *Id.* ¶¶ 26, 47–51.

## III.    ARGUMENT

### A.    Plaintiff's Exclusive Remedy is the FTCA.

The FTCA is the exclusive remedy for "personal injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b).  As amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), the FTCA provides a mechanism for the United States to substitute itself as defendant for employees[2] sued individually.  As relevant here, upon certification by the Attorney General's delegate that a federal employee was acting within the scope of her office or employment at the time of the incident out of which a state law claim arises, any civil action based upon the incident shall be deemed an action brought against the United States, and the United States shall be substituted as sole defendant with respect to those claims.  28 U.S.C. § 2679(d)(1).

The Westfall Act certification constitutes *prima facie* evidence that the employee's challenged conduct occurred within the scope of employment.  *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992).  The Attorney General's certification is the "first, but not final word" on the scope of employment issue.  *De*

---

[2] Members of Congress are "employees of the government" for purposes of the FTCA.  28 U.S.C. § 2671; *Williams v. United States*, 71 F.3d 502, 505 (5th Cir. 1995).

*Martinez v. Lamagno*, 515 U.S. 417, 432 (1995). Should plaintiff challenge the certification, he has the burden of providing facts to rebut the certification. *Schrob*, 967 F.2d at 936 (holding the court need not hold an evidentiary hearing on the issue of substitution of parties if the facts can be determined without an evidentiary hearing); *see also Brumfield v. Sanders*, 232 F.3d 376, 379–80 (3d Cir. 2000) (resolving scope of employment issue as a matter of law without discovery where Attorney General's certification was based on facts as alleged in the complaint).

Here, plaintiff presents no evidence at all, nor any forecast of evidence he could present, on the scope of employment issue and "conclusory allegations as speculation" are insufficient to overcome the *prima facie* validity of the Westfall Act certification. *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013). Accordingly, the Court may resolve the scope of employment issue as a matter of law based upon plaintiff's allegations. *See Freiman v. Lazur*, 925 F. Supp. 14, 19 (D.D.C. 1996) (court assumed all of plaintiff's allegations to be true and assessed scope of employment as a matter of law).

## B. District of Columbia, Not New Jersey, Scope of Employment Law Applies Here.

The FTCA instructs the district court to apply "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Richards v. United States*, 369 U.S. 1, 10 (1962). Here, that is District of Columbia law because, as alleged,

Representative Kamlager-Dove made and "republished" her statements from the District of Columbia. Am. Compl. ¶ 1. It is irrelevant that plaintiff is a resident of New Jersey. *Id.* ¶ 10. The FTCA focuses on where the acts or omissions occurred, not where those acts had their effects, even intended effects. Because the FTCA "requires application of the *whole* law of the States where the act or omission occurred," the Court should apply the District of Columbia's choice-of-law rules. *Richards,* 369 U.S. at 11 (emphasis added). Those rules, in turn, likewise dictate that District of Columbia law apply because it is "the jurisdiction where the employment relationship exists." *See Jacobs*, 724 F.3d at 221 (D.C. Cir. 2013) ("In determining whether an employee acted within the scope of his employment [under Westfall Act], we consider the substantive law of the jurisdiction where the employment relationship exists—here, the law of the District of Columbia."); *Bailey v. J&B Trucking Servs., Inc.*, 590 F. Supp. 2d 4, 10 (D.D.C. 2008) (applying District of Columbia choice-of-law rules and concluding that whether employee was acting within scope of employment was determined by law of State where allegedly negligent conduct occurred and the employment relationship was centered).

The FTCA does not define "scope of employment," but rather asks the Court, as in the case of tort claims generally, to look to "the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b); *see also Williams v. United*

*States*, 350 U.S. 857, 857 (1955) (per curiam) (finding a tort case "controlled by the California doctrine of respondeat superior"). Again, here, District of Columbia law because Resspreative Kamlager-Dove made her statements in the District of Columbia. Contrary to plaintiff's assertion, New Jersey scope of employment law does not apply in this case. *C.f.* Mot. 4. District of Columbia scope of employment law applies.

### C. The Statements at Issue Were Clearly Made Within the Course and Scope of Representative Kamlager-Dove's Office or Employment.

Plaintiff acknowledges that all conduct at issue constituted "talking to voters." *Id.* at 2; *see also id.* at 4 ("crowing to voters, and self-aggrandizement to voters on X and BlueSky"). As the Supreme Court has explained in the Speech or Debate Clause context, "[i]t is well known, of course, that Members of the Congress engage in many activities other than the purely legislative activities . . . [including] a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases and speeches delivered outside the Congress." *United States v. Brewster*, 408 U.S. 501, 512 (1972). Speaking to constituents about matters of public concern is a core job function for Members of Congress.

- 7 -

Assessing a Member of Congress's scope of employment is *different* than analyzing whether the conduct at issue falls within the Constitution's Speech or Debate Clause. All of the cases cited by plaintiff (*Hutchison v. Proxmire*, 408 U.S. 111 (1979), *Gravel v. United States*, 408 U.S. 606 (1972), and *Doe v. McMillan*, 412 U.S. 306 (1973)), Mot. 3, are Speech or Debate Clause cases that pre-date enactment of the Westfall Act. The United States does not assert here Representative Kamlager-Dove's Speech or Debate Clause immunity. It advances her Westfall Act immunity. Courts have rejected the same argument plaintiff advances here, that the extent of Speech or Debate Clause immunity is coextensive with the extent of Westfall Act immunity. *Operation Rescue Nat. v. United States*, 147 F.3d 68, 71 (1st Cir. 1998) (rejecting same argument advanced by plaintiff in his motion). The Speech or Debate Clause is not a limitation or a "ceiling" on immunity that Congress may bestow. *Nixon v. Fitzgerald*, 457 U.S. 731, 750 n.31 (1982) (noting Speech or Debate Clause immunity is separate and distinct from other immunities and does not limit those other immunities). Speech or Debate Clause cases have no bearing on the scope of employment analysis at issue here.

Numerous courts have determined that defamatory statements allegedly made by Members of Congress are within the course and scope of their employment, and those courts have universally recognized that Members of Congress act within the scope of their employment when they comment on an

- 8 -

event of widespread public interest.  *See Does 1–10 v. Haaland,* 973 F.3d 591, 600

(6th Cir. 2020) (Senators' unsolicited comments about plaintiff students'

involvement in event of widespread public interest within scope); *Wuterich*, 562

F.3d at 378–79 (Representative's allegedly false statements made to the press

about role of plaintiff's Marine Corps squad in civilian deaths within scope);

*Council on Am. Islamic Relations v. Ballenger*,  444 F.3d 659, 662 (D.C. Cir.

2006) (statement made to reporter during interview by Member of Congress about

plaintiff organization's alleged terrorist activities within scope); *Williams v. United

States,* 71 F.3d 502, 507 (5th Cir. 1995) (Representative's allegedly defamatory

statements made during television press interview within scope); *Chapman v.

Rahall*, 399 F. Supp. 2d 711, 715 (W.D. Va. 2005) (Representative's allegedly

defamatory statements about a reporter within scope); *Operation Rescue Nat'l v.

United States*, 975 F. Supp. 92, 108 (D. Mass. 1997), *aff'd*, 147 F.3d 68 (1st Cir.

1998) (Senator's allegedly defamatory statements made in response to press

questioning within scope).

   Applying scope of employment law from multiple states, each court

concluded the allegedly defamatory statements were within the Member's scope of

employment.  *Ballenger* arose from a claim that a Member of Congress defamed a

Muslim advocacy organization by telling a reporter his wife was "uncomfortable"

living across from the headquarters of a "fund-raising arm" of a "foreign terrorist

organization." 444 F.3d at 662. The Congressman made the statement in addressing his separation from his wife, and the District of Columbia Circuit rejected the plaintiff's argument that these statements were "purely private" as "at odds with reality" given the "level of public interest" in the matter. *Id.* at 665–66. In *Haaland*, the Sixth Circuit affirmed substitution, holding that social media posts from Members of Congress that asserted that high school students displayed "blatant hate, disrespect, and intolerance" toward a Native American veteran fell within the scope of their employment. 973 F.3d at 594. In *Murtha*, the court upheld certification of a Marine's claims that a congressman falsely stated for "his own private purposes" that the Marine's squad "deliberately murdered innocent Iraqi civilians in a cold-blooded massacre" and committed "war crimes." 562 F.3d at 378–79. In *Operation Rescue National*, the court upheld certification in a lawsuit alleging that a Senator defamed an anti-abortion organization at a fundraising luncheon, noting that "personal and public motives are often closely related" and that "[i]t is natural for public officials to believe that their own success, and that of their political parties, is inextricably linked with the public interest." 975 F. Supp. at 108. And in *Rahall*, the court upheld certification where a congressman responded to a reporter's allegations by calling him a "bigoted, right wing, redneck, racist wacko," concluding that the response "was clearly in the scope of his employment as a legislator, and was necessary to ensure his

effectiveness as a legislator and maintain the support of his constituents." 399 F.

Supp. 2d at 715.[3]

District of Columbia follows the traditional view of the law of respondeat

superior as expressed in Restatement (Second) of Agency § 228, rather than either

an "internalization approach" or a "hybrid approach" to the scope of employment

inquiry. *Trump v. Carroll*, 292 A.3d 220, 228 (D.C. 2023). Accordingly, an

employee's conduct falls within the scope of her employment if: "(a) it is of the

kind [s]he is employed to perform; (b) it occurs substantially within the authorized

time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve"

the employer. *Jacobs*, 724 F.3d at 221 (quoting Restatement (Second) of Agency

§ 228 (1958)).[4]

Federal and local courts in the District of Columbia have emphasized that

---

[3] *See also* Order, *Musgrave v. Mace*, No. 2:25-cv-1823, ECF No. 43, (D.S.C. Aug. 20, 2025) (Congresswoman's display of poster identifying plaintiffs and subjects of floor speech as sexual predators within Member's scope of employment); *Bobulinski v. Goldman*, No. 24-cv-974, 2025 WL 1707696, at *4 (D.D.C. June 18, 2025) (social media posts accusing witness of lying and spreading "Russian disinformation" within Member's scope of employment); *Isaac v. Cable News Network, Inc.*, No. 23-cv-247, 2023 WL 6847101, at *7 (D. Del. Oct. 17, 2023) (Member's statement in interview that plaintiff was "either a Russian agent or a participant in a Russian disinformation campaign" within scope of employment.).

[4] This test includes a fourth factor to be considered if an employee intentionally uses force against another. Plaintiff does not allege any intentional use of force, "therefore that factor is not relevant here." *Kelley v. FBI*, 67 F. Supp. 3d 240, 285 n.34 (D.D.C. 2014).

the scope of employment test is interpreted "very expansively" and "broadly" construes acts that may fall within the scope of employment.  *Id.* at 221; *accord Carroll*, 292 A.3d at 229.  Consistent with this broad construction, "several D.C. cases [have held] that seriously criminal and violent conduct can still fall within the scope of a defendant's employment under D.C. law including sexual harassment, a shooting, armed assault, and rape."  *Harbury v. Hayden*, 522 F.3d 413, 422 (D.C. Cir. 2008) (citing *Howard Univ. v. Best*, 484 A.2d 958, 987 (D.C. 1984) (university dean acted within scope of employment in sexually harassing faculty member during meetings); *Johnson v. Weinberg*, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee acted within scope of employment in shooting customer during dispute over removing clothes from washing machine); *Lyon v. Carey*, 533 F.2d 649, 652 (D.C. Cir. 1976) (mattress deliveryman acted within scope of employment in raping customer after dispute arose during delivery)).

Here, statements to constituents using official social media accounts and a Member's official website about a Subcommittee hearing easily satisfy all four elements of the Restatement's scope of employment test, as all the other courts to address similar statements have concluded.[5]  Plaintiff has made no showing to prove that Representative Kamlager-Dove's statements were not within the scope

---

[5] New Jersey also applies the Restatement's test.  *Davis v. Devereux Found.*, 37 A.3d 469, 489–90 (N.J. 2012).

of her office or employment and the Court should deny plaintiff's motion to strike.

Further, contrary to plaintiff's assertions, the test for scope of employment is not whether the statements were allegedly defamatory. Mot. 3. A scope of employment analysis necessarily trains on the nature of the conduct at issue, not on whether the conduct was allegedly tortious or improper. *See, e.g., Smith v. Clinton*, 886 F.3d 122, 126 (D.C. Cir. 2018); *Klayman v. Obama*, 125 F. Supp. 3d 67, 83 (D.D.C. 2015).

Finally whether an exception to the FTCA would bar plaintiff's suit against the United States is immaterial to the scope of employment analysis. *C.f.* Mot. 6. An "employee may not be sued even when the alleged tort is not compensable due to an exception to the Federal Tort Claims Act." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1147 (6th Cir. 1994) (citing *United States v. Smith*, 499 U.S. 160, 168–9 (1991)). The Westfall Act applies regardless of whether the underlying claim is actionable against the United States.

**D.    There is No Basis for Discovery.**

The Court should reject plaintiff's alternative request for jurisdictional discovery. Plaintiff's burden to present "persuasive evidence" that Representative Kamlager-Dove was not acting within the course and scope of her employment does not entitle plaintiff to jurisdictional discovery. As the court in *Murtha* held in overturning such a discovery order, discovery here would be tantamount to

- 13 -

decertification and would "effectively deny" Representative Kamlager-Dove the absolute immunity afforded under the FTCA.  562 F.3d at 382; *Bowles v. United States*, 685 F. App'x 21, 26 (2d Cir. 2017).

Where "the certification, the pleadings, the affidavits, and any supporting documentary evidence do not reveal an issue of material fact," the employee should not be "burdened with discovery."  *De Martinez*, 111 F.3d at 1153–55.  Here, plaintiff proposes extensive discovery.  Mot. 5.  This is little more than an impermissible "jurisdictional fishing expedition."  *Bell Helicopter Textron, Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 798 (N.D. Tex. 2010).  The Court should reject plaintiff's plea for discovery.

## IV.    CONCLUSION

For these reasons, the Court should deny plaintiff's motion in full.

Dated:        September 12, 2025        Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRSTEN L. WILKERSON
Director, Torts Branch

 *s/ Stephen R. Terrell*
STEPHEN R. TERRELL (CA Bar No. 210004)
Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888

Benjamin Franklin Station
Washington, D.C. 20044
Tel:   (202) 353-1651
Fax:   (202) 616-5200
Stephen.Terrell2@usdoj.gov

*Attorneys for Defendant United States of America*

## CERTIFICATE OF SERVICE

I certify that I am over the age of 18 and not a party to this action.  On

September 12, 2025, I uploaded the attached document to the Court's CM/ECF

System which will automatically accomplish service, consistent with Civ. RULE

5.2, through the Notice of Electronic Filing on the following individuals:

Michael M. Steinmetz, Esq.
Garson, Segal, Steinmetz, Fladgate LLP
164 West 25th Street
New York, NY  10001
*ms@gs2law.com*

*Counsel for plaintiff.*

Dated:        September 12, 2025


 *s/ Stephen R. Terrell*
STEPHEN R. TERRELL

- 15 -