Michael Steinmetz, Esq.
**Garson, Ségal, Steinmetz, Fladgate LLP**
164 West 25th Street, Suite 11 R
New York, NY 10001
Phone: (212) 380-3623
Fax: (347) 537-4540
ms@gs2law.com
Robert Garson, Esq. (*Pro Hac Vice*)
**GS2Law PLLC**
20801 Biscayne Blvd, Ste 506
Miami, FL 33180
Phone: (305) 780-5212
rg@gs2law.com
Attorneys for Matthew Taibbi

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

MATTHEW TAIBBI,

Plaintiff,                                                                    Civil Action No.: 2:25-cv-02275-EP-LDW

        v.

SYDNEY KAMLAGER-DOVE,
              Defendant.
_____x

**PLAINTIFF'S REPLY IN SUPPORT OF**
**MOTION TO STRIKE CERTIFICATION OR,**
**IN THE ALTERNATIVE, FOR LIMITED DISCOVERY**

Plaintiff Matthew Taibbi maintains its opposition to the United States' Notice of Substitution and moves to strike the Certification filed by the Department of Justice ("DOJ") under the Westfall Act, 28 U.S.C. § 2679.

I. INTRODUCTION

The United States' opposition (Opp.) fails to rebut Plaintiff's showing that Representative Sydney Kamlager-Dove's ("Defendant") republications of her defamatory statement, calling Plaintiff a "serial sexual harasser," on her official X, BlueSky, and website accounts were not within the scope of her employment as a Member of Congress. These republications, made hours after the April 1, 2025, Subcommittee hearing, were gratuitous, self-promotional, and unrelated to any legislative purpose. They served only to "crow" about the hearing and aggrandize Defendant to her followers, not to inform constituents about official business. Mot. 2, 4 (ECF No. 25-1).

As detailed in our motion, the Westfall Act certification is not conclusive, and Plaintiff bears the burden to show the conduct was outside the scope. *Osborn v. Haley*, 549 U.S. 225, 230 (2007); 28 U.S.C. § 2679(d). Plaintiff has met that burden through the allegations in the Amended Complaint (Am. Compl., ECF No. 8), which describe conduct plainly beyond official duties. The United States offers no contrary evidence, relying instead on a misapplication of District of Columbia law and inapposite cases involving different factual contexts.

Even assuming arguendo that D.C. law applies, a point we dispute, the republications fail the Restatement test for scope of employment. They were not the "kind" of conduct Defendant was employed to perform, nor were they actuated by a purpose to serve her employer. The United States' broad reading of D.C. law would immunize any post-hearing social media commentary, no matter how personal or defamatory, which stretches respondeat superior beyond recognition. As the D.C. Court

of Appeals recently clarified, "whether an employee was acting within the scope of employment is ordinarily a fact-intensive question for the factfinder." *Trump v. Carroll*, 292 A.3d 220, 225 (D.C. 2023).

If the Court finds any factual dispute, limited discovery is warranted to probe Defendant's motives and the context of the republications. The United States' resistance to discovery ignores Third Circuit precedent allowing it where, as here, the certification is challenged. The motion should be granted, or discovery permitted.

**II. DOJ Misstates the Applicable Law**

Under 28 U.S.C. § 1346(b)(1), the applicable law is that of the place where the tort occurred. While Defendant made her initial statement in D.C. during the hearing (Am. Compl. ¶ 1), the claims here arise from the subsequent republications on social media and her website, acts with their operative effects in New Jersey, where Plaintiff resides and suffered harm, namely reputational injury. Id. ¶ 10. The FTCA focuses on the "whole law" of the place of the act, including choice-of-law rules, but those rules point to New Jersey, not D.C. ) Richards v. United States, 369 U.S. 1, 11.

Even if D.C. law applied, both D.C. and New Jersey adopt the Restatement (Second) of Agency § 228. *See Di Cosala v. Kay*, 91 N.J. 159 (1982); *Trump v. Carroll*, 292 A.3d 220 (D.C. 2023). Both exclude conduct actuated by purely personal or political motives.

The United States cites *Jacobs v. Vrobel,* 724 F.3d 217, 221 (D.C. Cir. 2013), for the proposition that scope is determined by the law where the "employment relationship exists." Opp. 5-6. But *Jacobs* involved conduct centered in D.C., with no multi-state harm.

3

Here, the republications were disseminated nationwide, including to New Jersey audiences, and caused injury in New Jersey. Under D.C.'s own choice-of-law rules, which favor the jurisdiction with the most significant relationship to the occurrence and parties, New Jersey law applies because it is the place of injury and Plaintiff's domicile. See id. (applying "governmental interest" analysis); cf. Mot. 4 (arguing New Jersey's strong interest in protecting its residents from defamation).

Moreover, the FTCA does not rigidly apply the law of the actor's location when the harm is felt elsewhere, especially in defamation cases where publication and injury are key. The United States' approach would allow federal employees to defame out-of-state plaintiffs with impunity under the most employee-friendly law, undermining the FTCA's compensatory purpose. *Richards*, 369 U.S. at 10-11. New Jersey law, as outlined in our motion, requires a closer nexus to job duties, and the republications fail that test. Mot. 4-5.

Even if D.C. law applies, as discussed below, the result is the same: the conduct was outside the scope.

**III. EVEN UNDER DISTRICT OF COLUMBIA LAW, THE REPUBLICATIONS WERE NOT WITHIN THE SCOPE OF EMPLOYMENT**

In conclusory fashion, the United States claims the republications were "clearly" within scope under D.C. law, which broadly interprets the Restatement (Second) of Agency § 228. Opp. 7, 11 (citing *Trump v. Carroll*, 292 A.3d 220, 228 (D.C. 2023)). But breadth does not equate to boundlessness.

As the D.C. Court of Appeals emphasized in *Carroll*, D.C. law "generally adheres to the Restatement (Second) of Agency's statement of *respondeat superior* law as

4

expressed in § 228," id. at 228, but "whether an employee was acting within the scope of employment is ordinarily a fact-intensive question for the factfinder," id. at 225. The court rejected a "categorical reading" of prior cases such as *Council on Am. Islamic Relations v. Ballenger, 444 F.3d 659 (D.C. Cir. 2006)* and declined to decide the scope question on the record before it, leaving it to the factfinder. Id. at 239-40. Here, too, the republications are not "clearly" within scope as a matter of law; at minimum, factual issues preclude certification without discovery.

D.C. law still requires the conduct to be (a) of the kind employed to perform, (b) within authorized time/space limits, and (c) actuated at least in part by a purpose to serve the employer. Jacobs, 724 F.3d at 221; Carroll, 292 A.3d at 228. The United States glosses over these elements, assuming that any communication to "constituents" about a hearing qualifies. Opp. 7. This ignores the personal, post-hearing nature of the republications, which added taunting commentary ("It's telling that he didn't [defend himself]") unrelated to legislative work. Am. Compl. ¶¶ 3-5.

The United States concedes the Speech or Debate Clause does not apply (Opp. 8) yet relies on Clause cases like *United States v. Brewster*, 408 U.S. 501, 512 (1972), to argue that "speaking to constituents" is core. Opp. 7. But *Brewster* and the Clause cases cited in Mr. Taibbi's motion, *Hutchison v. Proxmire*, 408 U.S. 111 (1979); *Gravel v. United States*, 408 U.S. 606 (1972), distinguish between protected legislative acts and unprotected "news releases" or social media posts that republish defamatory content for political gain. The Clause's limits inform the scope inquiry here, as both protect official functions but not personal errands. The United States' attempt to divorce the analyses (Opp. 8) fails;

5

courts routinely analogize them in Westfall cases. See, e.g., *Operation Rescue Nat'l v. United States*, 975 F. Supp. 92, 108 (D. Mass. 1997). As *Carroll* clarified, D.C. law "do[es] not adopt a categorical reading" of such cases. 292 A.3d at 239.

Under D.C. law, the republications fail the Restatement test.

### A. The Republications Were Not the Kind of Conduct Representative Kamlager-Dove Was Employed to Perform

D.C. law requires the conduct to be "of the kind" the employee is hired for, not merely incidental. *Carroll*, 292 A.3d at 228-29. Members of Congress are employed to legislate, oversee, and communicate officially, not to republish defamatory hearing excerpts on social media with added personal jabs. The initial hearing statement may have been official (though Plaintiff disputes its veracity), but the republications were voluntary, post-hearing amplifications to a broader audience, including non-constituents. Am. Compl. ¶¶ 3-5. This is akin to the "newsletters" or "releases" *Brewster* deemed unprotected, as they go beyond core duties. 408 U.S. at 512.

The United States cites cases where statements were within scope, but those involved direct responses to press inquiries or comments tied to ongoing current events, involved legislators speaking directly to the press on matters of constituent or public concern, not self-aggrandizing posts on old widely debunked tin-hatted conspiracies. Opp. 9-10 (citing *Ballenger*, 444 F.3d 665-66 (D.C. Cir. 2006) (statement during interview about personal matter with public interest); *Does 1–10 v. Haaland*, 973 F.3d 591, 594 (6th Cir. 2020) (social media posts about viral public incident)).

Here, the republications added no new information, they merely highlighted Defendant's attempted "gotcha" moment, serving personal political branding, not

6

congressional work. Cf. Mot. 3-4. D.C. law's "expansive" view includes criminal acts like assault if foreseeably tied to duties (Opp. 12), but defamation via social media taunts is not a foreseeable "kind" of congressional employment. *Carroll*, 292 A.3d at 229 (emphasizing nexus to job functions); see also id. at 230 ("The employment must have created more than the mere opportunity to commit the tort; there must still be some relationship or nexus between the tortious conduct and the employee's responsibilities for it to be an outgrowth of a job-related controversy.").

### B. The Republications Were Not Actuated by a Purpose to Serve the Employer

While even partial motivation to serve the employer suffices, the United States offers no evidence of any such purpose here. Opp. 11-12 (citing Restatement § 228). The republications' taunting tone "It's telling that he didn't" is highly suggestive of a personal motive to demean Plaintiff, not to advance House business. Am. Compl. ¶ 3.

D.C. courts scrutinize motive, rejecting certification where conduct is "purely private." *Ballenger*, 444 F.3d at 665. The United States claims "personal and public motives are often closely related" (Opp. 10, quoting *Operation Rescue*, 975 F. Supp. at 108), but that does not immunize all and every act, there must be some employer-serving purpose. *Carroll*, 292 A.3d at 234-35. Here, the hearing was over, and the posts added nothing substantive, just crowing and derision. This is self-aggrandizement, not service to Congress. Mot. 4. As Carroll explained, D.C. law requires the factfinder to determine if the "partial purpose to serve [the] employer was more than an insignificant interest." 292 A.3d at 236. No such showing exists here.

7

**C. The Cases Cited by the United States Do Not Control Here**

The United States lists numerous cases certifying scope for Members' statements (Opp. 9-11), but none involve post-hearing social media republications with added defamatory commentary, and simply citing to cases does not render them analogous. For example, in *Ballenger*, the statement was in a press interview about a personal matter with public ties, not a targeted repost. 444 F.3d at 662. The D.C. Court of Appeals has since clarified it does "not adopt a categorical reading of *Ballenger*." Carroll, 292 A.3d at 239. In *Haaland*, the posts commented on a viral event involving constituents, not a hearing witness. 973 F.3d at 594. In *Wuterich v. Murtha,* 562 F.3d 375 (D.C. Cir. 2009), the statements were to the press about an ongoing investigation, tied to oversight duties. 562 F.3d 375, 378-79 (D.C. Cir. 2009). In Chapman v. Rahall, the response was to a reporter's direct allegation, necessary for "effectiveness as a legislator." 399 F. Supp. 2d 711, 715 (W.D. Va. 2005). In *Williams v. United States*, 71 F.3d 502, 507 (5th Cir. 1995) the interview was about legislative matters.

These cases involved real-time or solicited comments, not voluntary republications hours later. The United States' more recent citations buried in a footnote (Opp. 11 n.3) are similarly distinguishable *Musgrave Mace, No. 2:25-cv-1823* involved floor speeches (core legislative acts); *Bobulinski v. Goldman, No. 24-cv-974, 2025 WL 1707696*, social posts accusing a witness of disinformation during an active inquiry. *Isaac v. Cable News Network, Inc., No. 23-cv-247, 2023 WL 6847101*, an interview statement tied to national security. None match the gratuitous, post-event taunts here, of scurrilous allegations debunked a decade ago.

8

The United States dismisses the tortious nature as irrelevant (Opp. 13), but D.C. law considers whether the act was "wrongful" in assessing motive. *Carroll*, 292 A.3d at 228. In *Carroll* itself, a highly analogous case involving allegedly defamatory statements by a high-ranking official, the D.C. court did not find the statements "clearly" within scope but held it was a fact question for the jury. Id. at 240. The FTCA exception for libel (which the United States ignores at Opp. 13) reinforces that such claims are not meant for substitution if outside scope, as Congress did not intend to immunize personal defamation.

**IV. PLAINTIFF IS ENTITLED TO LIMITED DISCOVERY**

If the Court does not strike the certification outright, which in our submission it should, limited discovery is warranted. The United States claims no basis exists because Plaintiff offers "no evidence" (Opp. 5, 13-14), but the Amended Complaint's allegations create a factual issue on motive and nexus to duties. *Brumfield v. Sanders*, 232 F.3d 376, 379-80 (3d Cir. 2000) is clear that resolution without discovery is only permitted if there no material fact issue, the Attorney General's certification is based upon fact as alleged in the complaint. Here, questions remain such as:

i) What was Defendant's intent in republishing?

ii) Were the posts authorized by House staff?

iii) Did they serve any official purpose?

As *Carroll* underscores, scope inquiries are "ordinarily a fact-intensive question for the factfinder," especially for public officials' statements. 292 A.3d at 225, 240.

The United States cites *Wuterich* for the proposition that discovery would "effectively deny" immunity (Opp. 1, 13-14; 562 F.3d at 382), but *Wuterich* overturned broad discovery where the complaint alone sufficed for certification. *Id*. In contrast, Third Circuit law advocates for targeted discovery on challenged certifications. *Schrob v. Catterson*, 967 F.2d 929, 936 (3d Cir. 1992) "this undoubtedly requires an opportunity for limited discovery, and, if necessary, an evidentiary hearing." *De Martinez v. Lamagno*, 515 U.S. 417, 432 (1995), emphasizes that certification is "not the final word," and "the scope-of-employment judgment determinative of substitution can and properly should be checked by the court."

Plaintiff's proposed discovery is narrow with depositions of Defendant and her staff, and documents on the posts' creation and purpose. Mot. 5. This is not a "fishing expedition" (Opp. 14) but targeted to resolve the scope issue without burdening Defendant unduly. Denying it would prejudice Plaintiff, as the United States provides no affidavits or evidence beyond the certification itself. Carroll's fact-intensive approach supports discovery here.

The United States' prematurity argument (Opp. 2 n.1) is unavailing; the Court can address the motion now or order a conference, but the substance warrants relief.

**V. CONCLUSION**

For these reasons, the Court should grant Plaintiff's motion to strike the certification, restoring Defendant as the proper party. In the alternative, the Court should permit limited discovery.

Dated: September 15, 2025
New York, NY

Respectfully submitted,

**Garson Segal**
**Steinmetz Fladgate LLP**

/s/ Michael Steinmetz
Michael Steinmetz (MS-3164)
164 W25th St, 11F
New York, NY 10001
212-380-3623
ms@gs2law.com

**GS2Law PLLC**

/s/ Robert Garson
Robert Garson (pro hac vice)
20801 Biscayne Blvd, Ste 506
Miami, FL, 33180
305-780-5212
rg@gs2law.com

*Counsel for Plaintiff Matthew Taibbi*