<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MATTHEW TAIBBI<br><br>    Plaintiff,<br><br>    v.<br><br>SYDNEY KAMLAGER-DOVE,<br><br>    Defendant. | No. 25cv2275 (EP) (LDW)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Matthew Taibbi brings this action alleging that U.S. Representative Sydney Kamlager-Dove defamed him through statements she made on the House floor and on social media. *See* D.E. 8 ("Amended Complaint" or "Am. Compl."). The United States of America (the "Government") certified substitution as the defendant, asserting that Representative Kamlager-Dove's allegedly defamatory statements were made within the scope of her federal employment. D.Es. 23 ("Substitution Notice") & 23-1 ("Certification"). Following substitution, the Government moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). D.E. 29-1 ("Motion to Dismiss" or "MTD").[1] Taibbi opposes the Motion to Dismiss. D.E. 30 ("MTD Opp'n"). The Government replies. D.E. 34 ("MTD Reply").

Separately, Taibbi moves to strike the Certification, deny substitution, and, in the alternative, requests limited discovery. D.E. 25-1 ("Motion to Strike" or "Strike Mot.").[2] The

---

[1] The Government filed its notice of Motion to Dismiss at D.E. 29.

[2] Taibbi filed his notice of Motion to Strike at D.E. 25.

Government opposes Taibbi's Motion to Strike.  D.E. 26 ("Strike Mot. Opp'n").  Taibbi replies.

D.E. 27 ("Strike Mot. Reply").

At the center of this dispute is whether Representative Kamlager-Dove's allegedly defamatory statements were within the scope of her employment.  After considering the parties' briefs and having determined that oral argument is not necessary,[3] the Court finds that the statements were made within the scope of Representative Kamlager-Dove's employment.  Substitution here is proper.  In turn, because the United States is properly substituted, Taibbi's claim must be dismissed.  Taibbi's Motion to Strike is **DENIED**, the Government's Motion to Dismiss is **GRANTED**, and the Court will **DISMISS** the Amended Complaint *without prejudice*.

## I.    BACKGROUND[4]

Taibbi is a journalist, author, and commentator domiciled in New Jersey.  Am. Compl. ¶ 13.  Representative Kamlager-Dove—who is domiciled in California—is a member of the United States House of Representatives, representing California's 37th Congressional District.  *Id.* ¶ 15.  Representative Kamlager-Dove is the Ranking Member of the South and Central Asia Subcommittee of the House Foreign Affairs Committee (the "Subcommittee").  *Id.* ¶ 17.[5]

The Subcommittee held a hearing on April 1, 2025, titled "Censorship Industrial Complex: The Need for First Amendment Safeguards at the State Department" (the "Hearing").  171 Cong. Rec. D320 (daily ed. Apr. 1, 2025); Am. Compl. ¶ 17.  Taibbi was invited to testify at the Hearing.

---

[3] *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

[4] The facts in this section are taken from the factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the Motion to Dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Subcommittee on South and Central Asia*, H. Comm. on Foreign Affs., https://democrats-foreignaffairs.house.gov/south-central-asia (last visited May 25, 2026).

2

Am. Compl. ¶ 18.  At the start of the Hearing, Representative Kamlager-Dove delivered her

prepared remarks, which included the following statements:

> Thank you, Mr. Chair, and thank you for being here for our first South and Central Asia Subcommittee hearing. I look forward to working with the Chair in a bipartisan way on the critical issues we are charged with overseeing.
>
> Unfortunately, we're not having a hearing about any of those. Instead, this Subcommittee is wasting taxpayer time and resources on the fifth such hearing Republicans have held across multiple committees on the so-called "censorship-industrial complex."
>
> The majority is relitigating a made-up conspiracy theory about a part of the State Department that no longer exists to distract from the dumpster fire foreign policy this Administration is pursuing—*and elevating a serial sexual harasser as their star witness in the process*.

Am. Compl. ¶ 5 (the "Statements") (emphasis added).  The same day of the Hearing,

Representative Kamlager-Dove reposted a video of the Statements on two social media platforms:

X (formerly Twitter) and BlueSky.  *Id.* ¶¶ 3–5.  Both posts contained the same statement: "After

this, Republicans gave Matt Taibbi time to defend himself. It's telling that he didn't."  *Id.*



*Id.* ¶ 3 (the "X Post").



*Id.* ¶ 4 (the "BlueSky Post").  Representative Kamlager-Dove also posted the Statements on her

official House.gov website.





*Id.* ¶ 5 (the "Website Post").[6]

Taibbi alleges that the "serial sexual harasser" comment by Representative Kamlager-Dove was directed at him and that it is "demonstrably false" and "made with actual malice." *Id.* ¶¶ 2, 6. Taibbi claims that the republications of the Statements—the X, BlueSky, and Website Posts— were defamatory under New Jersey law. *Id.* ¶¶ 26, 47–55.

Taibbi sued Representative Kamlager-Dove for libel on April 3, 2025. *See* Am. Compl. On September 3, 2025, the Attorney General's delegate—Kirsten Wilkerson, Director, Torts Branch, Civil Division, U.S. Department of Justice—certified that Representative Kamlager-Dove "was acting within the course and scope of her office or employment with respect to the acts or omissions at issue in [the] complaint." MTD at 7; *see* Certification. After the Certification, the United States was automatically substituted as a party defendant for Representative Kamlager-Dove. *Osborn v. Haley*, 549 U.S. 225, 231 (2007) (holding that the United States shall remain the defendant upon certification "unless and until the District Court determines that the employee, in fact, and not simply as alleged by the plaintiff, engaged in conduct beyond the scope of [her] employment").

On September 8, 2025, Taibbi filed the Motion to Strike. Strike Mot. On September 26, 2025, the Government filed the Motion to Dismiss. MTD. Both are fully briefed. *See* Dkt.

## II.    LEGAL STANDARD

"When a federal employee is sued for on-the-job tortious conduct, the Westfall Act, 28 U.S.C. §§ 2671, 2674, 2679, in conjunction with the Federal Tort Claims Act, *id.* § 2671 *et seq.*

---

[6] Press Release, Rep. Sydney Kamlager-Dove, *Kamlager-Dove Holds First Hearing as Top Democrat on House Foreign Affairs Subcommittee on South and Central Asia, Calls out Republican Hypocrisy on Free Speech* (Apr. 1, 2025), https://kamlager-dove.house.gov/media/press-releases/kamlager-dove-holds-first-hearing-top-democrat-house-foreign-affairs.

5

('FTCA'), authorizes the Attorney General to substitute the United States for the individual defendant[,] and to have the claim dismissed on sovereign immunity grounds." *Giordano v. Hohns*, 159 F.4th 179, 182 (3d Cir. 2025) (citation modified). Sovereign immunity is only available if "the defendant qualifies as an 'employee of the government,' [28 U.S.C.] § 2671, and the Attorney General certifies that the employee 'was acting within the scope of his office or employment,' *id.* § 2679(d)(1)." *Giordano*, 159 F.4th at 182.

Upon certification by the Attorney General, the employee is dismissed, and the United States is substituted in the action as a defendant; all tort claims are then governed by the FTCA. *Osborn*, 549 U.S. at 230. "[T]he FTCA and the Westfall Act have worked in tandem to provide the 'exclusive' remedy in 'any civil action or proceeding for money damages,' 28 U.S.C. § 2679(b)(1), stemming from 'torts committed by federal employees acting within the scope of their employment.'" *Giordano*, 159 F.4th at 185 (citing *Levin v. United States*, 568 U.S. 503, 509 (2013)). This system shields federal employees from "personal tort liability for conduct on the job." *Giordano*, 159 F.4th at 185.

The Attorney General's substitution certification, however, is reviewable. *Id.* A district court can determine that "the Attorney General's scope-of-employment certification was incorrect" and "resubstitut[e] the federal official as a defendant." *Osborn*, 549 U.S. at 242. Certification only serves as "*prima facie* evidence that the employee's challenged conduct was within the scope of employment." *Schrob v. Catterson*, 967 F.2d 929, 935 (3d Cir. 1992) (collecting cases). The "plaintiff challenging the certification has the burden of coming forward with specific facts rebutting it." *Id.* (citation omitted). To rebut, plaintiff must provide more than mere conclusory statements. *Jacobs v. Vrobel*, 724 F.3d 217, 221 (D.C. Cir. 2013).

It is the district court's responsibility to confirm that substitution is appropriate. *Giordano*, 159 F.4th at 185 (citation omitted). The district court must ensure that (1) the individual defendant is an employee of the government as defined by the FTCA and (2) the alleged tort occurred within the scope of the defendant's employment, which is a question of state law. *Id.* at 186 (citations omitted). And under certain circumstances, the district court can "authorize limited discovery . . . but it is not required to do so when material facts are not disputed." *Id.*

If the district court finds that "the requirements for substitution are met, the case proceeds against the United States, subject to the FTCA's waiver of sovereign immunity." *Id.* But if the tort at issue falls within one of the exclusions from the FTCA's waiver, the "district court must dismiss the suit, leaving the plaintiff without a tort action against any party." *Id.* (citing *De Martinez v. Lamagno*, 515 U.S. 417, 420 (1995)) (internal quotation marks omitted). Claims arising out of libel are excluded from the FTCA's waiver of sovereign immunity, *Brumfield v. Sanders*, 232 F.3d 376, 382 (3d Cir. 2000), and "must be dismissed for lack of subject matter jurisdiction." *Upshaw v. United States*, 669 F. Supp. 2d 32, 43 (D.D.C. 2009) (citing *Sloan v. Dep't of Hous. & Urb. Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001)).

## III.    DISCUSSION

The threshold question is whether Westfall Act certification here was proper. Because Representative Kamlager-Dove acted as a federal employee within the scope of her employment, the United States was properly substituted as the defendant. Taibbi does not challenge the facts under which the Government completed certification. Thus, the FTCA's express exclusion of libel claims against the Government requires dismissal.

### A.    Westfall Act Certification Is Proper

As a member of Congress, Representative Kamlager-Dove is a federal employee.  *Sharratt v. Murtha*, 437 F. App'x 167, 172–73 (3d Cir. 2011) (treating a member of Congress as a federal employee for Westfall Act certification); *Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009) (same).  For certification here to be proper, Representative Kamlager-Dove must have acted within the scope of her employment when making and republishing the Statements.

"In determining whether an employee was acting within or outside the scope of h[er] duties" for the purpose of Westfall Act certification, courts "look to the law of the state in which the action took place." *Vanderklok v. United States*, 868 F.3d 189, 204 (3d Cir. 2017) (citing *CNA v. United States*, 535 F.3d 132, 146 (3d Cir. 2008)).  Here, the parties dispute whether the law of the District of Columbia or the law of New Jersey controls.  *See* Strike Mot. at 4; Strike Mot. Opp'n at 5–7.

Both the District of Columbia and New Jersey, however, follow the Restatement (Second) of Agency.  *See Jacobs*, 724 F.3d at 221 (applying the Restatement (Second) of Agency in determining under D.C. law whether a federal employee acted within the scope of their employment for Westfall Act certification); *Biase v. Kaplan*, 852 F. Supp. 268, 291–92 (D.N.J. 1994) (same but under N.J. law); *see also Est. of Beim v. Hirsch*, 121 F. App'x 950, 953–54 (3d Cir. 2005) ("To determine whether an employee was acting within the scope of employment, New Jersey courts apply the Second Restatement of Agency test[.]").  So, the Court's analysis and determination are the same here regardless of whether District of Columbia or New Jersey law applies.  *See Wuterich v. Murtha*, 562 F.3d 375, 383 (D.C. Cir. 2009) (noting that "the scope of employment inquiry is substantially the same" between two jurisdictions that incorporate the Restatement standard).

8

The Court applies the following test to determine whether Representative Kamlager-Dove's statements were within the scope of her employment:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>     (a) it is of the kind [s]he is employed to perform;
>     (b) it occurs substantially within the authorized time and space limits; and
>     (c) it is actuated, at least in part, by a purpose to serve the master.

Restatement (Second) of Agency § 228 (Am. L. Inst. 1958) (citation modified).[7] To be within the scope of her employment, Representative Kamlager-Dove's Statements must have (1) been of the kind that she is employed to perform; (2) occurred substantially within the time and space limits of her employment; and (3) been made, at least in part, by a purpose to serve her constituents. Here, all three elements are met.

*First*, "an employee's conduct falls within the meaning of § 228(1)(a) if that conduct is either 'of the same general nature as' *or* 'incidental to' the conduct authorized so as to be within the scope of employment." *Trump v. Carroll*, 292 A.3d 220, 230 (D.C. 2023) (citing § 229 of the Restatement (Second) of Agency, titled "Kind of Conduct Within Scope of Employment"); *see* Restatement (Second) of Agency § 228 cmt. a (explaining that other sections of the Restatement clarify the concepts initially set forth in § 228).

Here, Taibbi challenges Representative Kamlager-Dove's statements "made during a congressional hearing in Washington, D.C." which allegedly "became actionable defamatory statements" when they were "republished . . . on social media sites." Am. Compl. ¶¶ 1–2. Taibbi argues that "crowing to voters, and self-aggrandizement to voters on X and Bluesky is not official congressional work but partisan communication." Strike Mot. at 4. Taibbi claims the Statements were republished to "bolster [Representative Kamlager-Dove's] political standing." *Id.*

---

[7] The Court omits element 1(d) of § 228, which deals with physical "force, intentionally used by the servant," because it is inapplicable here.

9

Representative Kamlager-Dove's Statements and republications, however, are precisely the kind of conduct that is "a central part of the job for members of Congress." *Bobulinski v. Goldman*, No. 24-974, 2025 WL 1707696, at *3 (D.D.C. June 18, 2025). Indeed, a "primary obligation of a [m]ember of Congress in a representative democracy is to serve and respond to his or her constituents." *Council on Am. Islamic Rels. v. Ballenger*, 444 F.3d 659, 665 (D.C. Cir. 2006) (citation omitted). As the Ranking Member of the Subcommittee holding the Hearing, Representative Kamlager-Dove's remarks mentioned "taxpayer time and resources" and "foreign policy"—topics that are important to members of Congress and that are top-of-mind for their constituents. Am. Compl. ¶ 5.

Republishing the statements online does not change the analysis. Taibbi claims that the "republications on X, BlueSky, and [Representative Kamlager-Dove's] website were not legislative work, [and] occurred outside the legislative setting." Strike Mot. at 4. But members of Congress routinely engage with the public on social media and on the internet as part of their jobs. *See, e.g.*, *Bobulinski*, 2025 WL 1707696, at *2 (finding that a congressman's social media posts related to a witness's testimony before a House committee); *Does 1-10 v. Haaland*, 973 F.3d 591, 602 (6th Cir. 2020) ("There is no meaningful difference between tweets and the other kinds of public communications between an elected official and their constituents that have been held to be within the scope-of-employment under the Westfall Act."). As Taibbi concedes, Representative Kamlager-Dove was simply "talking to voters on Twitter." Strike Mot. at 2.

*Second*, Representative Kamlager-Dove's statements were also "substantially within the authorized time and space limits." Restatement (Second) of Agency § 228(1)(b). To satisfy this prong, the "employee's conduct does not need to be absolutely within the authorized space and time of the employment" but only "'substantially,' which counsels against a strict understanding

10

of where and when an employee was on duty." *Carroll*, 292 A.3d at 232–33. "Defining the authorized space and time of employment is more difficult for employees who are by the nature of their job 'always on duty.'" *Id.* at 233.

As a member of Congress, Representative Kamlager-Dove's employment "is not a job like any other." *Ballenger*, 444 F.3d at 666. Indeed, members of Congress "might be required to make public statements on pressing issues at any time of day or night," and "[i]t would make little sense to conclude that members of Congress act beyond their duties by commenting . . . outside of conventional work hours." *Bobulinski*, 2025 WL 1707696, at *3. There is no question that Representative Kamlager-Dove's Statements at the Hearing are within the appropriate time and space limits. And as discussed above, so, too, were her republications on social media later that day. Both the X and the BlueSky Posts were published around 12:40 p.m. Eastern Time on a Tuesday—during typical work hours on a weekday. *See* Am. Compl. ¶¶ 4–5.

The *third* and final requirement is "whether, in the moments surrounding the employee's conduct, there is evidence that the employee was, in fact, motivated by the purpose of serving the master." *Carroll*, 292 A.3d at 238. Although "at least some discernable purpose to serve the employer" is required, an "employee could be concurrently motivated by a personal purpose." *Id.*

As a member of Congress, Representative Kamlager-Dove has a "proper duty" to "look diligently into every affair of government and to talk much about what [she] sees." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 865 (2020). And she did so at the Hearing. In addition to the allegedly defamatory statement, Representative Kamlager-Dove discussed taxes, foreign policy, and immigration policy. She explicitly stated political disagreement with the opposing party in her social media posts, writing: "Republicans gave Matt Taibbi time to defend himself. It's telling that he didn't." Am. Compl. ¶¶ 3–4. Political statements by members of Congress—such as

Representative Kamlager-Dove's here—are made within their scope of employment. *See, e.g.,* *Mac Isaac v. Cable News Network, Inc.*, No. 23-247, 2023 WL 6847101, at *6 (D. Del. Oct. 17, 2023) (affirming Westfall Act certification because "[m]embers of Congress[] act within the scope of their employment when communicating their views on matters of public interest to their constituents, even when those views veer into the political or include allegedly defamatory statements").

Representative Kamlager-Dove's statements "were calculated to serve the interests of [her] constituents (i.e., employers) by informing them of [her] views regarding" certain issues, laws, and policies. *Does*, 973 F.3d at 602; *see also Ballenger*, 444 F.3d at 665 (holding that defendant's conduct was at least partially motivated "by a legitimate desire to discharge his duty as a congressman"). Put simply, Representative Kamlager-Dove's statements were "out of an interest in serving the public [and her constituents]—even if [s]he was partially motivated" by other political reasons. *Sharratt*, 437 F. App'x at 172.

The Court holds that Westfall Act certification here is proper, finding that Representative Kamlager-Dove is a federal employee and that the Statements were within her scope of employment.

### B.    No Discovery Is Warranted

"As a general matter, there is no right to discovery in a Westfall Act case." *Giordano*, 159 F.4th at 200–01. Discovery on Westfall Act certification—which occurs at the pleading stage—is only proper "when there is reason to believe that the [Certification] 'is based on a different understanding of the facts than is reflected in the complaint.'" *Id.* at 201 (citing *Melo v. Hafer*, 13 F.3d 736, 747 (3d Cir. 1994)). Discovery is to be "circumscribed as narrowly as possible" and is within the district court's "discretion." *Schrob*, 967 F.2d at 936.

Here, the Government submitted the Certification based on "the amended complaint dated April 8, 2025." Certification. The Amended Complaint relies on the allegedly defamatory statements made by Representative Kamlager-Dove and supports that she was acting within the scope of her employment. *See* Am. Compl.

Taibbi "bears the burden to come forward with specific facts to rebut certification." *Giordano*, 159 F.4th at 201. Indeed, he "must identify some reason to believe that the [Government's] understanding of the facts differs from facts in the complaint, and specify what discovery would show that difference." *Id.* Taibbi does neither. Although Taibbi does list potential discovery questions, he does not address *how* or *why* the Government's understanding of the facts here differs from those in the Complaint.

Instead, Taibbi argues that discovery is warranted because the Certification "was issued without any apparent investigation into the facts," and cites *Schrob*, 967 F.2d at 936–37, for the proposition that there is a "genuine factual dispute" in this case, Strike Mot. at 5–6. Taibbi is mistaken. The Government may decide that Westfall Act substitution is proper based on a complaint alone. *See Giordano*, 159 F.4th at 201 (affirming district court denial of discovery in Westfall Act certification with facts only "supported by the complaint"); *Taboas v. Mlynczak*, 149 F.3d 576, 580 (7th Cir. 1998) ("A motion for substitution may be decided on the face of the complaint (akin to a motion to dismiss) when the movant contends that, even accepting the allegations of the complaint as true, the defendant acted within the scope of employment."). And fatally, Taibbi does not substantively engage or attempt to explain any supposed factual dispute with the Government. Thus, Taibbi's discovery request is **DENIED**.

## C.    Sovereign Immunity Requires Dismissal

Having established that Westfall Act certification is proper, the Court finds it does not have subject matter jurisdiction over this action, and, therefore, this case must be dismissed. "[T]he FTCA expressly excludes defamation claims from the federal government's immunity waiver." *Giordano*, 159 F.4th at 186. And "[s]overeign immunity bars suits against the United States absent [such] an explicit and unequivocal waiver." *Ballenger*, 444 F.3d at 666.

The "Government's substitution doom[s Taibbi's] case" for two reasons. *Giordano*, 159 F.4th at 201. First, Taibbi failed to respond to the Government's assertion that this Court lacks subject matter jurisdiction because of sovereign immunity. *See* MTD Opp'n. By failing to respond, Taibbi forfeited any potential counterarguments or substantive responses. *See Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008) (affirming dismissal on grounds raised in defendants' motion but not addressed in plaintiff's opposition); *Woodell v. Coach*, No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) ("As [Plaintiff] does not address these arguments in his opposition brief, any arguments in opposition are deemed waived.").

Second, more importantly, because Taibbi's claim "fall[s] under one of the enumerated exceptions to the FTCA," his claim "must be dismissed for lack of subject matter jurisdiction." *Upshaw,* 669 F. Supp. 2d at 43.

## IV.    CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS**, on this **8th** day of June 2026,

**ORDERED** that Plaintiff's Motion to Strike, D.E. 25, is **DENIED**; and it is further

**ORDERED** that the Government's Motion to Dismiss, D.E. 29, is **GRANTED**; and it is further

14

**ORDERED** that Plaintiff's Amended Complaint, D.E. 8, is **DISMISSED** *without prejudice*;[8] and it is finally

**ORDERED** that Plaintiff may file a second amended complaint within **45 days** of this Order.

_____
Evelyn Padin, U.S.D.J.

_____
[8] While the Court provides Plaintiff leave to amend the Complaint, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008), the Court cautions Plaintiff that "any amendment must have a good faith basis on which [p]laintiff can proceed," *Uygur v. Gensler*, No. 24-975, 2024 WL 3497888, at *4 (E.D. Pa. July 19, 2024).

15